**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>Mortgages Ltd.,<br>    Debtor.<br>_____<br>PDG Los Arcos, LLC, et al.,<br>    Appellants,<br>vs.<br>Robert M. Adams, et al.,<br>    Appellees.<br>_____ | No. CV 09-1312-PHX-MHM<br>(Consolidated)<br><br>BK. No. 2:08-bk-7465-RJH<br><br>Consolidated cases:<br>ADV. No. 2:08-ap-00781-RJH<br>ADV. No. 2:08-ap-00831-RJH<br><br>**ORDER** |

Appellants National Retail Development Partners I, LLC ("NRDP") and PDG Los Arcos, LLC ("PDG") appeal from the Bankruptcy Court's (Judge Randolph J. Haines) May 19, 2009 Orders concluding that "under Arizona law, a bare assignment of a contract . . . in the circumstances where the assignment is for purposes of financing," does not imply an assumption of duties and granting Appellees' Motion to Dismiss. Following oral argument held on March 24, 2010, the Court took the matter under advisement. Having considered the written and oral arguments of the parties, the applicable law, and the record before it, the Court now rules.

/ / /

## I. BACKGROUND

This case arises from the complex and well-publicized bankruptcy of Mortgages Ltd. Mortgages Ltd. was in the business of lending money to commercial real estate developers. In this case, Mortgages Ltd. entered a $26 million construction loan agreement with PDG and a $10 million construction loan agreement with NRDP. (R 2,3)[1] The loans were documented with loan agreements, promissory notes, deeds of trust, guarantees and other documents.

In turn, Mortgages Ltd. sold "participations" in the loans to pass-through investors, who are the Appellees in these proceedings (collectively "Investors"). (R 1) For their investment, the Investors received undivided fractional interests in the promissory notes and deeds of trust. In addition, in each case there was also an Assignment stating that "Assignor [Mortgages Ltd.] hereby assigns to Assignee the above-referenced interest in the following documents," which included the Construction Loan Agreement. (R 6) The loans were not fully funded by the time of the Mortgages Ltd. bankruptcy. NRDP and PDG asked the Investors for additional funding, but they refused. Thereafter, NRDP and PDG each filed suit in state court against the Investors, alleging that they were liable under the assignment of the construction loan agreements to fully fund the loans.

The investors subsequently removed the cases to Bankruptcy Court. NRDP and PDG then filed motions to remand, which the Bankruptcy Court denied. Thereafter, NRDP and PDG filed nearly identical Motions for Leave to Appeal the denial of the remand in this Court (CV 09-13-PHX-MHM and CV 09-91-PHX-MHM), and, in the alternative, Motions to Withdraw the Reference (CV 09-276-PHX-MHM and CV 09-277-PHX-MHM).

During the pendency of these interlocutory appeals, the Investors filed Motions to Dismiss in the Bankruptcy Court, which the Bankruptcy Court granted in identical orders issued on May 19, 2009. NRDP and PDG appealed from the Bankruptcy Court's dismissal

---

[1] Citations to Appellants' Excerpts of Record are delineated as "R," citations to Appellee ML Manager LLC's Excerpts of Record are delineated as "ML R," and citations to Appellee Investors' Excerpts of Record are delineated as "I R."

- 2 -

1 | orders. In light of the Bankruptcy Court's rulings, this Court dismissed the interlocutory
2 | appeals without prejudice and consolidated the instant appeals for consideration. (CV 09-
3 | 1312-PHX-MHM and CV 09-1328-PHX-MHM).

**II.     STANDARD OF REVIEW**

To avoid dismissal under Rule 12(b)(6), which is incorporated by reference into the Bankruptcy Rules by 7012(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to glean the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S. Ct. 1955. In Ashcroft v. Iqbal, 129 S. Ct. 1937,1953 (2009), the Supreme Court clarified that its decision in Twombly "expounded the pleading standard for 'all civil actions,'" rejecting the plaintiff's argument that the standard should be limited to the anti-trust context. See also, Moss v. U.S. Secret Service, 572 F.3d 962, 969 n.7 (9th Cir. 2009) (noting Twombly's broad application).

A dismissal for failure to state a claim is reviewed de novo. Carpenter v. FDIC, 205 B.R. 600, 604 (9th Cir. B.A.P. 1997). In determining whether a plaintiff has stated a claim, the court must generally treat the allegations of the complaint as true. Id. However, the Court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy." Marder v. Lopez, 450 F.3d 445,448 (9th Cir. 2006). The allegations of the complaint need not be treated as true if they are refuted by the referenced documents. Carpenter, 205 B.R. at 604. Similarly, the court may consider facts subject to judicial notice, including the record of related proceedings. Mullis v. U.S. Bankruptcy Ct., 828 F .2d 1385, 1388 (9th Cir. 1987).

/ / /
/ / /

1 **III. DISCUSSION**

2     **A. MOTION TO DISMISS**

3     The Bankruptcy Court identified three independent bases for dismissal of

4 Appellants' complaints: (1) that <u>Grant v. Harner</u>, 29 Ariz. 41, 239 P.296 (1925), requiring

5 an express delegation of contract liabilities, is dispositive; (2) that third-party beneficiary

6 law precludes an action against the Investors on the assignment; and (3) that even if the

7 court were to conclude that Arizona would follow the Restatement of Contracts § 328,

8 there would be no presumptive delegation of duties to the Investors.[2] (R 15)

9     **1. Arizona Precedent**

10     Relying on <u>Norton v. First Fed. Sav.</u>, 624 P.2d 854 (Ariz. 1981), Appellants argue

11 that "the assignment/delegation issue is unresolved in Arizona" and urge the Court to

12 predict how the Arizona Supreme Court would decide the issue. They argue that the

13 Arizona court "would likely follow the Restatement's presumptive approach" and find a

14 delegation of duties. Appellants also argue that the Arizona Supreme Court "may also

15 adopt the approach that implies an assumption of duties from the surrounding

16 circumstances," and that the circumstances here imply such a delegation. The

17 Bankruptcy Court rejected these arguments, finding that the Arizona Supreme Court's

18 holding in <u>Grant</u> was controlling. This Court agrees.

19     In <u>Grant</u>, the Arizona Supreme Court considered whether the assignment of a

20 contract carried with it an implied delegation of the duties owed by the assignor to the

21 other original contracting party, the obligee. <u>Grant</u> at 43, 239 P. at 296. Finding that the

22 defendant-assignee did not become indebted to the obligee, the court cited the "well-

23 established rule" that assignment of a contract does not relieve the assignor of his duties

24 to the obligee, nor "does it have the effect of creating a new liability on the part of the

---

[2] In its opening brief, Appellants chose to address only the Bankruptcy Court's first basis for its holding. Accordingly, Appellants have waived any argument with respect to the Bankruptcy Court's second and third bases. <u>Amoco Oil Co. v. U.S.</u>, 234 F.3d 1374, 1377 (Fed. Cir. 2000). The Court, in its discretion, will address all three.

- 4 -

assignee to the other party to the contract assigned, because the assignment does not bring them together, and consequently there cannot be the meeting of the minds essential to the formation of a contract." Id. at 43-44, 239 P. at 296-97.

In Norton, the Arizona Supreme Court cited Grant's "general principal[] that an assignment of a contract does not operate to cast on the assignee liabilities imposed by the contract on the assignor." 128 Ariz. at 181, 624 P.2d at 859. The Norton court noted that "a review of cases from other jurisdiction discloses that many courts agree with this basic rule." Id. While suggesting, in dicta, that because Arizona recognizes implied contracts, "it would be logical for us to recognize an implied assumption of duties by an assignee," the court concluded that the circumstances of the case, which involved an interest in real property, did not require it to reach that question. Id. Furthermore, the court concluded that even if the Restatement rule's presumptive approach were adopted in Arizona, under the circumstances presented, it would not operate to impose duties upon the assignee. Id.

Accordingly, because Norton did not overrule Grant, Grant remains controlling precedent in Arizona. In the present case, as in Grant, there was no express assumption of duties, therefore the Investors cannot be held liable for Mortgages Ltd.'s funding obligations, and the Bankruptcy Court properly dismissed the Complaints.

In their reply brief, Appellants argue that Grant "follows the implied delegation approach" and that the Bankruptcy Court should have applied it. While the Grant court considered whether the assignment of a contract carried with it an implied delegation of the duties, it held to the contrary. Grant's analysis in this regard does not negate its holding nor does it change the effect of that holding on the facts presented here.

**2.   Third-Party Beneficiaries**

The Bankruptcy Court found, as its second basis for dismissal, that Appellants are not third-party beneficiaries of the assignments and therefore cannot enforce any obligations the Investors may have had to provide funds to Mortgages Ltd. Citing the "Arizona rule" that "for a person to recover as a third-party beneficiary of a contract, an

1 intention to benefit that person must be indicated in the contract itself," the Bankruptcy
2 Court concluded that nothing in the assignments between Mortgages Ltd. and its
3 Investors indicated an intent to directly benefit the Appellants.
4 Appellants assert, in their opening brief and at oral argument, that they never
5 contended that they were third-party beneficiaries. Nonetheless, the Court agrees with the
6 conclusion of the Bankruptcy Court.

### 3. Implied Delegation of Duties

8 As its third basis for dismissal, the Bankruptcy Court found that even if it were to
9 conclude that Arizona would follow the Restatement of Contracts § 328, there were no
10 facts alleged in the Complaints from which a delegation of duties could be implied. This
11 Court agrees.

12 Under the presumptive approach, duties are not implicitly delegated to an assignee
13 where "the circumstances indicate the contrary, as in an assignment for security . . . ."
14 Restatement of Contracts § 328. The Bankruptcy Court noted that the purpose of the
15 assignments to the Investors was to raise funds with which to fund the loans. While the
16 Bankruptcy Court acknowledged that these assignments may not technically constitute
17 securities because the Investors were intended to become the owners of the fractional
18 interests in the notes rather than lenders secured by security interests in the notes, it
19 nevertheless held that the Restatement's term "assignment for security" must be read
20 broadly to include situations, such as the present one, where the assignment is "intended
21 to make the assignee's investment a secure one."

22 The Bankruptcy Court also found that the transaction documents demonstrated that
23 "this was a financing transaction akin to the resale of collateralized debt obligations in the
24 securities markets." Indeed, a review of these documents shows that the Investors had no
25 control over the loans; at most, the Investors could have their interests diluted or
26 liquidated. (R 1, 35-26, 50-51) Thus, as the Bankruptcy Court explained, it was "not . . .
27 a purchase of the business of Mortgages Ltd. where the buyer intended to take over the
28 lending business and with it the obligation to fund the outstanding loan agreements."

1 Accordingly, the Court agrees with the Bankruptcy Court's conclusion that even if the
2 presumptive approach were adopted in Arizona, the assignments would not imply a
3 delegation of duties.

4 Important policy considerations support the Bankruptcy Court's conclusion. To
5 extend the law by presuming a delegation of duties in the financing transaction at issue
6 would negatively impact broader financial markets by making every investor potentially
7 liable to the obligee. As the Bankruptcy Court noted, "[b]y making the [assignee] a
8 surety, not only will accounts receivable financing be discouraged, but transaction costs
9 will undoubtedly increase for everyone . . . without any discernable benefit." Michelin
10 Tires (Can.) Ltd. v. First Nat'l Bank of Boston, 666 F.2d 673, 679-80 (1st Cir. 1981).

11 In sum, the Court finds that each of the bases relied upon by the Bankruptcy Court
12 supports its dismissal of Appellants' Complaints for failure to state a claim.

### 4. A.R.S. § 44-101(9)

14 A fourth basis for dismissal of the Complaints was raised in the briefing but not
15 relied upon by the Bankruptcy Court. Arizona's statute of frauds, A.R.S. § 44-101(9),
16 prohibits an action based "[u]pon a contract, promise, undertaking or commitment to loan
17 money" in excess of $250,000 for commercial purposes, unless accompanied by a writing
18 signed by the party to be charged. Here, Appellants do not cite any writing, signed by the
19 Investors, charging the Investors with the obligation to fund the loans. Accordingly,
20 without such a writing, under Arizona law, an action cannot be maintained against the
21 Investors and dismissal was required for this reason as well.

22 In light of the Court's ruling above, Appellants' argument that this Court should
23 have withdrawn the reference is moot.

24 / / /
25 */ / /*

1 | **B.    BANKRUPTCY COURT'S "RELATED TO" JURISDICTION**

Bankruptcy courts have jurisdiction over cases "related to" Title 11. 28 U.S.C. § 1334(b). The test for whether a case is related to bankruptcy was set forth in <u>Pacor Inc. v. Higgins</u>, 743 F.2d 984 (3rd Cir. 1984). Under <u>Pacor</u>, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." <u>Id.</u> at 994; <u>see also</u> <u>Fietz v. Great W. Sav.</u>, 852 F.2d 455, 457 (9th Cir. 1988).

In denying Appellants' motions to remand, the Bankruptcy Court found that NRDP's and PDG's suits affected the estate because if NRDP and PDG prevail, the Investors may make claims for indemnity against Mortgages Ltd., increasing the claims against the estate; that the suits could impair Mortgages Ltd.'s ability to collect the funds it loaned, which are assets of the estate; and that the Investors could assert counterclaims, which would reduce the amount that Mortgages Ltd. can recover from NRDP and PDG.

Appellants argue that NRDP's and PDG's suits are not related to the Mortgages Ltd. bankruptcy because their outcome will have no effect on the bankruptcy estate. Appellants contend that there is no effect on the bankruptcy estate because Mortgages Ltd. is not a party and because Mortgages Ltd. never lent any of its own money and assigned all of its interest in the loans to the Investors.

The Bankruptcy Court found that NRDP's and PDG's lawsuits could impose additional liability on the estate. If Appellants establish the Investors' liability for the failure to fund the loan, the Investors would have a claim for indemnification against Mortgages Ltd. Appellants respond that under <u>Pacor</u>, 743 F.2d at 995, theoretical indemnity claims do not control related-to jurisdiction.[3]

---

[3] Appellants also contend that the Investors do not have an indemnity claim because the Agency Agreement explicitly releases Mortgages Ltd. Appellants raise this argument for the first time in their reply brief, therefore depriving Appellees of an opportunity to respond. Because Appellants failed to include this argument in their opening brief, this issue is waived. <u>Amoco Oil Co. v. U.S.</u>, 234 F.3d 1374, 1377 (Fed. Cir. 2000).

1    Contrary to Appellants' assertion, courts in the Ninth Circuit have held that
2 potential indemnification satisfied the Pacor test even in the absence of an "unconditional
3 indemnification agreement." See, e.g., In re Sizzler Restaurants International, lnc., 262
4 B.R. 811, 818-19 (C.D.Cal. 2000) ("This court declines to accept a reading of Pacor
5 which requires an unconditional indemnification agreement or otherwise automatic
6 liability on the part of the debtor in order to find the existence of related to jurisdiction.");
7 In re Master Mortgage, Inc., 168 B.R. 930, 934-935 (W.D. Mo. 1994) (citing cases
8 finding jurisdiction where "there is an identity of interest between the debtor and the third
9 party, usually an indemnity relationship, such that a suit against the non-debtor is, in
10 essence, a suit against the debtor or will deplete assets of the estate").
11   The potential chance that NRDP's and PDG's action against the Investors could
12 affect the administration of Mortgages, Ltd.'s estate is enough to confer jurisdiction. See,
13 e.g., Edge Petroleum Operating Co. v. GPR Holdings, L.L.C., 483 F.3d 292, 298 (5th Cir.
14 2007); Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 585-87 (5th Cir.
15 1999) (holding that even a claim between two non-debtors that will potentially reduce the
16 bankruptcy estate's liabilities produces an effect on the estate sufficient to confer "related
17 to" jurisdiction); Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1307 (9th Cir. 1989)
18 (upholding "related to" jurisdiction over third-party action as specific performance
19 remedy in third-party action would reduce damages in breach of contract claim against
20 bankruptcy estate).
21   The Bankruptcy Court also found that any liability would impair the ability of
22 Mortgages Ltd. to collect on the amounts that were lent, which "is definitely an asset of
23 the estate." Appellants counter that Mortgages Ltd. never loaned its own money and
24 assigned away its interest in the loans, thus there was no asset of the estate to collect.
25   Contrary to Appellants' assertion that Mortgages Ltd. "assigned all of its interests
26 in the loans to investors," the record reveals that Mortgages Ltd. retained, by Appellants'
27 own estimation, at least a 4.806% to .816% interest in the loans. (R 7; I R 2). In addition,
28 Mortgages Ltd. held interests in the deeds of trust, and the promissory notes, in addition

- 9 -

to its valuable servicing rights. (I R 11) All of these were assets of the estate.

The Bankruptcy Court further found that the Investors "will probably file compulsory counterclaims" against Appellants for the amounts of their funds that were advanced and have not been paid and that the recovery on those counterclaims will reduce the amount Mortgages Ltd. can recover from Appellants. Appellants again respond that Mortgages Ltd. never loaned its own money and assigned its interest in the construction loans to the Investors. As discussed above, Mortgages Ltd. held interests in the loans, deeds of trust, and the promissory notes, as well as valuable servicing rights. Appellants also dismiss the Bankruptcy Court's finding as "speculative." To the contrary, the record reveals that certain Investors have filed proofs of claim against Mortgages Ltd. in the Bankruptcy Court. (R I 12, Exh. E)

Based on its findings, the Bankruptcy Court concluded that "[a] closer relationship to both the assets of the estate and the claims against the estate can hardly be imagined," and that "these close relationships satisfy the Pacor/Fietz test."

The Bankruptcy Court also noted that the term "related to" "has been defined by the Supreme Court to include matters that would logically be litigated as a single litigation unit because they involve claims that "derive from a common nucleus of operative fact.'" Pierce v. Conseco Fin. Servicing Corp. (In re Lockridge), 303 B.R. 449, 454 (Bankr. D. Ariz. 2003). The Bankruptcy Court found that there "can be no debate that a claim of investors' liability for failure to fully fund the construction loans made by Mortgages Ltd. is a single litigation unit, involving the common nucleus of operative facts, as the claim of Mortgages Ltd. to recover the funds it actually lent, a claim that [is] indisputably property of the estate."

Accordingly, the Bankruptcy Court concluded that "the claims asserted in this litigation, as well as the counterclaims and third party claims that may be asserted, are highly related if not integral to the Mortgages Ltd. bankruptcy case."

Based on the foregoing, this Court agrees with the Bankruptcy Court that NRDP's and PDG'S lawsuits are related to the bankruptcy proceeding, and concludes that the

1  Bankruptcy Court has "related to jurisdiction" under 28 U.S.C. § 1334(b) over NRDP's
2  and PDG's actions.
3      In light of the Court's conclusion, the issue whether these cases are noncore is
4  moot.

**C.    The Removal**

In the order denying Appellants' Motion to Remand, the Bankruptcy Court found that the removal was procedurally proper under the bankruptcy removal statute, 28 U.S.C. § 1452.[4] The Bankruptcy Court reasoned that the "bankruptcy removal statute, § 1452, is conspicuously different from the general removal statute, because it permits 'a party' to remove an action, rather than 'a defendant or defendants.'" The Bankruptcy Court concluded that because any party may remove based on bankruptcy jurisdiction, the unanimity requirement of the general removal statute does not apply to bankruptcy removals and therefore NRDP's and PDG's actions were properly removed.

Appellants argue that "[b]y its language, § 1452 only allows a party to remove a claim," not an entire civil action. Appellants contend that if "a defendant removes an entire action, then the general removal statute, 28 U.S.C. § 1441, applies, and . . . the consent of all the other defendants" is required. Because all defendants did not join in the removal, Appellants maintain that the removal was procedurally defective and the Bankruptcy Court "should have remanded on these grounds alone."

Although this issue has not been explicitly decided by the Ninth Circuit, numerous other jurisdictions have agreed with the Bankruptcy Court and held that the rule of unanimity does not apply to removal pursuant to § 1452(a). See, e.g., Creasy v. Coleman Furniture Corp., 763 F2d 656, 660 (4th Cir. 1985); Conn. Res. Recovery Auth. v. Lay, 292 BR 464, 471 (D. Conn. 2003); N.Y. City Employees' Retirement Sys. v. Ebbers (In

---

[4] 28 U.S.C. § 1452 provides in pertinent part:
**Removal of claims related to bankruptcy cases**
(a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action . . . ."

- 11 -

re WorldCom Sec. Litig.), 293 B.R. 308, 330 (S.D.N.Y. 2003); Abner v. Mate Creek Loading, Inc. (In re Mid-Atl. Res. Corp.), 283 B.R. 176, 183 (S.D. W. Va. 2002); Sommers v. Abshire, 186 B.R. 407, 409 (E.D. Tex. 1995).

Further, citing 28 U.S.C. § 1452(a), the Ninth Circuit explained in dicta that "[t]hose matters falling under the heading of concurrent jurisdiction (i.e., civil actions involving claims that arise under or in or are related to Title 11 proceedings) may be filed originally in state court, then subsequently removed by one of the parties to federal district court." Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1432, 1435 (9th Cir. 1995). Subsequently, in Schulman v. California (In re Lazar), 237 F.3d 967, 973 n.2 (9th Cir. 2001), the Ninth Circuit, citing Maitland, reiterated this proposition.

Appellants reliance on Abrego v. Dow Chemical Co., 443 F.3d 676, 680 (9th Cir. 2006), Hewett v. City of Stanton, 798 F.2d 1230, 1232-33 (9th Cir. 1986), and Hills v. Hernandez, 1998 WL 241518 at *2 (E.D. La.) is misplaced. Abrego, Hewett and Hills relied on § 1446(b), not § 1452(a), in holding that unanimity applied to removal proceedings. Although Hills also addressed § 1452(b), it did so in the context of permissive abstention and equitable remand. Id. at *2-3.

In light of the weight of authority and consistent with Congress' intent "to grant comprehensive jurisdiction to bankruptcy courts so that they might better deal efficiently and expeditiously with all matters connected with the bankruptcy estate," Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995), the Court concludes that the removal was procedurally proper under 28 U.S.C. § 1452(a), and that the Bankruptcy Court properly denied Appellants' motions to remand on this ground.

In their response briefs, Appellees argue that even if unanimity is required, any alleged "defect" was cured when the Investors joined in the Notices of Removal upon being served. The Court need not address this issue in light of its ruling above.

### IV. CONCLUSION

In sum, the Court concludes that the Bankruptcy Court properly dismissed Appellants' Motions to Dismiss for failure to state a claim and that it had jurisdiction to

1 | do so. Further, the Court concludes that the removal was procedurally proper.
2 | Accordingly,

**IT IS ORDERED** affirming the Bankruptcy Court's judgments.

DATED this 31st day of March, 2010.

_____
Mary H. Murgia
United States District Judge